**REED, et, Appellees, v RAMEY, et, Appellants.**

Ohio Appeals, First District, Hamilton County.

No. 6874. Decided December 15, 1947.

Charles K. Pulse, and Vernon W. McDaniel, Cincinnati, for plaintiffs-appellees.

Messrs. Schear & Klein, Cincinnati, for defendant-appel- lant, Ramey.

### OPINION

By ROSS, J.:

This is an appeal on questions of law from the Municipal Court of Cincinnati, in which a judgment upon the pleadings was rendered in favor of the plaintiff upon their motion. The defendant's motion for judgment was denied.

The pleadings consisted of an Amended Bill of Particulars and an answer which contained in addition to specific denials, certain admissions, **a general denial.** All of the allegations of the Bill of Particulars are to be construed most favorably to the defendants on the plaintiffs' motion, and the defendants are entitled also to those allegations of the answer favorable to them, not denied by the plaintiff. No reply was filed by plaintiffs.

This action in which the plaintiffs seek a judgment for $316.73 is classified as a "first class" case by the rules of the Municipal Court of Cincinnati, of which rules this court is required to take judicial notice, such obligation resting upon the trial court. **Glicklich v Garfield, 31 Abs, 129.**

Rule XIV of the Municipal Court of Cincinnati, Rules of Practice, provides in part:

"No reply pleadings in third class cases will be required—pleas of confession and avoidance, set-off and counter-claim, will be considered as denied by the plaintiff, without pleading, as justice requires. In first class cases affidavits of reply shall be filed on or before the fifth day after rule day for statement of defense."

Rule XIX provides:

"In all first class cases the provisions of the Ohio Code of Civil Procedure governing the practice and procedure of courts of Common Pleas, so far as the same are applicable to the Municipal Court and consistent with the act of April 7, 1913, establishing said Municipal Court, and not inconsistent with the rules otherwise adopted for the practice and procedure of said Municipal Court, shall be held to apply to and govern the proceedings in said Municipal Court."

**Sec. 11329 GC,** provides:

"Excepting averments as to value, or the amount of damage, for the purposes of an action, every material allegation of a petition, not controverted by the answer, and every material allegation of new matter in an answer not controverted by the reply, shall be taken as true. New matter alleged in a reply shall be deemed controverted by the adverse party as upon a denial or avoidance as the case may require."

It is thus apparent that the proper allegations of the answer not inconsistent with allegations in the petition must in this case be taken as true, no reply having been filed thereto.

It is apparent, of course, that no judgment can be rendered on the pleadings in favor of the plaintiff upon his motion therefor, where essential factual predicates for such judgment are issues of fact produced by affirmance and denial of the parties.

The assignments of error raise the general questions of whether the trial court erred as a matter of law in granting plaintiffs' motion for judgment and denying defendants' motion for judgment. While the effect of the absence of a reply may be here indirectly considered, there cannot be said to be any decision of the Municipal Court of Cincinnati upon a **question of practice**, hence, the provisions of §1558-27 GC, are not involved.

Although the action was brought against two defendants as members of a partnership, only one of them John P. Ramey, the only appellant, filed an answer.

Turning to the Amended Bill of Particulars it appears that the plaintiffs entered into a contract with the defendants as a partnership, doing business as the R. & R. Engineering Company, by which the latter were engaged to furnish and install a furnace and heating plant in the residence of the plaintiffs for the sum of $675.00. Contrary to the statement of plaintiffs in their brief, there is no allegation either in general or specific terms that the defendants agreed "to apply the contract price to the payment of the material and labor bills." The nearest allegation to this is that the defendants "were by virtue of and contract with plaintiffs bound and obligated to pay" such bills. (Exact quotation.) This is a mere conclusion of law, and has no standing as an allegation of fact.

It is further alleged by the plaintiffs that the installation was made, that upon demand of the defendants, payment was made to the defendants of the full contract price.

Ramey in his answer denies that plaintiffs made payment to him of the contract price, and states that if paid it was paid to "the defendant Ralph, S. Miller after plaintiffs had full knowledge of the dissolution of the partnership of R. & R. Engineering Co."

The plaintiffs allege that the defendants represented that all bills incident to such installation due and owing material men, subcontractors and laborers had been paid in full. The defendant Ramey in his denies he made such representation and his general denial covers his partner. So that such allegation is fully controverted.

It is further alleged in the Amended Bill of Particulars that the defendants failed to pay The Cincinnati Stamping & Furnace Company the sum of $316.48 for material furnished defendants and installed in the residence of plaintiffs under the contract with the defendants, and that by reason of such failure The Cincinnati Stamping & Furnace Company filed a mechanic's lien upon the real property of plaintiffs in which the furnace was installed, that such lien holder made demand upon plaintiffs for payment, and threatened foreclosure of such lien and that plaintiffs were required to and did pay said lien of $316.48 on May 12, 1947.

The defendant Ramey in his answer merely admits that the plaintiffs paid the furnace company. His general denial traverses the allegations of plaintiffs that a lien was filed against their property, that the furnace company demanded payment, that it threatened to foreclose the lien. So then the only uncontroverted fact upon this phase of the action is that the plaintiffs paid the furnace company $316.48, which sum was an indebtedness of the partnership assumed by Miller. Some comment is made by defendant Ramey that such payment was made after the original Bill of Particulars was filed. The allegation would have been proper in a supplemental Bill of Particulars and the Amended Bill of Particulars may be so considered. **McMurray v Vaughn's Seed Store, 117 Oh St, 236, 239; City of Cincinnati v Cameron, 33 Oh St, 336.**

Plaintiffs allege that by reason of the failure and neglect of defendants to pay the material man, the consequent assertion of a claim against them and filing of a lien upon their property which they were required to pay, the plaintiffs have suffered damage in the amount of $316.48, for which amount with incidental costs, they ask judgment.

Of course, the filing of the lien and threat to foreclose as well as the demand for payment having been denied, the allegation of damage rests only upon the uncontroverted state-

ment that the partners failed to pay the furnace company. Before considering the situation thus confronting the trial court upon the motions of plaintiffs and the defendant Ramey for judgments, the allegations, admissions, and denials of the answer of Ramey should be considered in detail, although to some extent a repetition of what has been hereinbefore noted.

The defendant Ramey in his answer states that he was a member of a partnership with his co-defendant Ralph S. Miller, doing business as alleged by plaintiffs, that they conducted such business until August 2, 1946, when such partnership was dissolved, the said Miller taking all assets by bill of sale from Ramey and assuming all partnership obligations, and such facts were thus known to plaintiffs and that they consented to same; that at the time such dissolution and transfer of assets took place, there was owing to The Cincinnati Stamping & Furnace Company the sum of $316.48; that the plaintiffs with full knowledge of such dissolution agreement and bill of sale, and consenting to the terms therein set forth paid to Miller the balance of the contract price without requiring said Miller to see that all bills for material furnished plaintiffs were paid, and without demanding any affidavit showing such bills were paid.

The answer concludes with this statement:—"This answering defendant denies all and singularly the allegations set forth in the amended bill of particulars not herein specifically admitted to be true."

Now this action is against the individual members of the partnership for a claim based upon a partnership contract. The defendant Miller is not contesting the claim against him and we are not concerned with any rights or defenses he might have asserted.

Two questions are presented: (1) Was the Court in error in rendering judgment against Ramey upon these pleadings? (2) And if so, should the Court have rendered judgment on these pleadings in favor of Ramey?

Ramey, of course, is jointly responsible for the partnership obligations, with Miller. The partnership has been dissolved. This in no way excuses Ramey from any obligation which was created by virtue of the partnership relation. **30 O. Jur., p. 1100,** "Partnership", Section 117. Apparently, the action of the plaintiffs sound in tort. "Plaintiffs say that they were required to pay said mechanic's lien **by reason of the failure and neglect** of the defendant to pay for material as aforesaid and that they have, therefore been damaged" etc. (Emphasis added.) However, if the plaintiffs are en-

titled to any relief under the facts stated, they are not bound by allegations implying a tort. **Ketcham v Miller, et al., 104 Oh St, 372; Triff, Admx., v National Bronze & Aluminum Foundry Co., 135 Oh St, 191.** Miller received payment of the balance of the contract price. He had a perfect right to receive this sum, and, of course, there was a duty upon him to pay the materialmen.

Ramey states he made no representations as to payment of bills for material and his general denial has the effect of denying that Miller made such representations. There was an obligation on Ramey as well as Miller to see that the furnace company was paid. The dissolution did not relieve Ramey from this obligation.

As far as the uncontroverted allegations of the pleadings are concerned, the plaintiffs paid the furnace company voluntarily, without even demand and no duress or compulsion, and with no demand upon either Ramey or Miller that the debt of this furnace company be paid by them. Under such admitted facts they could only be mere volunteers. It is sufficient to charge Ramey upon the doctrine of subrogation. It is claimed this equitable right may not be asserted in an action in the Municipal Court of Cincinnati, because it has no jurisdiction in equity.

If this action had been filed in the Common Pleas Court, it would have been, as it is in the Municipal Court, an action for the recovery of a certain sum of money only. The Municipal Court of Cincinnati is given the same jurisdiction as that entertained by the Common Pleas Court in actions for money only where the amount sought to be recovered does not exceed the sum of $1,000.00, and is in excess of the exclusive jurisdiction of Justices of the Peace.

Certainly, this action could have been maintained in the Common Pleas Court, and if subrogation could there be recognized, it must be recognized in the Municipal Court of Cincinnati.

In **38 O. Jur., p. 305**, "Subrogation", section 56, it is stated:

"A distinction is drawn between an action for money only, the right to which grew out of subrogation, and the right to enforce subrogation in a court of equity. Subrogation and the rights under subrogation are by assignment by operation of law. When any person pays the debt of another under such circumstances that he is entitled to be subrogated to the creditor's place, he becomes an assignee in law of the right to whatever the creditor has the right to do, and, if he is com-

pelled to pay, he is entitled to bring an action to recover money, which is based upon the right growing out of subrogation and is in no sense an action to enforce subrogation in a court of equity."

In **Krotine, et al. v Link, et al., 36 Oh Ap, 537,** it is stated in the syllabus to the opinion:

"Subrogation and rights arising thereunder arise through assignment by operation of law.

"Action to recover money based upon right growing out of subrogation not being to enforce subrogation held 'action at law' within municipal court's jurisdiction." See, also **Toohey v Simmons, et al., 13 O. O. 27.**

If the facts noted justify the application of the doctrine it may be asserted in the Municipal Court of Cincinnati. But do these facts justify the application of the rule?

In **38 O. Jur., p. 256,**—"Subrogation", Section 9, it is stated:

"A stranger or volunteer, as those terms are used with reference to the subject of subrogation, is one who, in no event resulting from the existing state of affairs, can become liable for the debt and whose property is not charged with the payment thereof and cannot be sold therefor."

See, also: **Auto Ins. Co. v. Cas. Co., 147 Ohio St., 79.**

In 50 Am. Juris., p. 699, "Subrogation", section 23, it is stated:

"The right of subrogation is not necessarily confined to those who are legally bound to make the payment, but extends as well to persons who pay the debt in self-protection, since they might suffer loss if the obligation is not discharged. In this class are included subsequent encumbrancers paying off a prior encumbrance. The extent or quantity of the subrogee's interest which is in jeopardy is not material. If he has any palpable interest which will be protected by the extinguishment of the debt, he may pay the debt and be entitled to hold and enforce it just as the creditor could. It would seem that one acting in good faith in making his payment, and under a reasonable belief that it is necessary to his protection, is entitled to subrogation, even though it turns out that he had no interest to protect."

Among the **uncontroverted** facts, there is nothing to indicate whether the furnace company was in position

to assert a lien against the plaintiffs or not. As far as their allegations go, the plaintiffs may have paid a debt which never could have been asserted against them. It is only by virtue of the lien laws that they could be placed in jeopardy. The debt was the debt only of the partners, hence, as far as the allegations, which could be considered upon the motion for judgment by the plaintiffs, is concerned, the plaintiffs paid a debt which they never could be required to pay, and in doing so were mere volunteers.

What has been said indicates, that in view of the situation thus placed before the trial judge on these motions, no judgment either for the plaintiffs or the defendant Ramey could be rendered on the pleadings, which presented factual issues that only a trial could determine.

One of my associates has suggested that it should be said that if the uncontroverted allegations of the amended Bill of Particulars showed that the plaintiffs had paid the debt of the defendants under duress, compulsion, or justifiable apprehension or fear, then the judgment of the trial court would be correct. Unquestionably this is true. So if the facts untraversed had shown that the furnace company threatened to foreclose a lien on plaintiffs' property, or that they had a lien on plaintiffs' property which could be foreclosed, then the plaintiffs were fully warranted in protecting their title and ownership of the property from possible sale under foreclosure by paying the creditor, and would have a right to collect the amount of such payment from the defendants. Under such circumstances, they could not be considered mere volunteers. See, 50 Am. Juris., supra. Under the uncontroverted facts, however, this situation is not presented.

The trial court committed error, prejudicial to the defendant Ramey in rendering judgment on the pleadings, and such judgment is, therefore, reversed and the case remanded to the Municipal Court of Cincinnati for further proceedings according to law.

MATTHEWS, PJ, ROSS & HILDEBRANT, JJ, concur in syllabus, opinion & judgment.